# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ramona Baker, | No. CV-17-00116-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ramona Baker, now substituted by her husband, Andrew Baker, seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the ALJ's decision contains reversible error, the Court will remand for further proceedings.

## I. Background.

Plaintiff was 49 years old at the time of her death on March 29, 2017. Doc. 15-1. Plaintiff previously worked as a collections clerk, babysitter, and server. A.R. 215. On April 24, 2012, Plaintiff applied for disability benefits, alleging disability beginning October 15, 2011. A.R. 184. On March 13, 2015, Plaintiff appeared and testified at a hearing before the ALJ. A.R. 36-78. A vocational expert also testified. *Id.* On August 10, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 13-25. This became the Commissioner's final

decision when the Appeals Council denied Plaintiff's request for review on November 15, 2016. A.R. 1-5.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at

step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work. If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show in the fifth step that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, and that she had not engaged in substantial gainful activity since October 15, 2011. A.R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: "obesity, recurrent deep vein thrombosis (DVT) and pulmonary embolisms (PE), status post filter placement, left knee arthrosis, hypertension/coronary artery disease, status post pacemaker, generalized anxiety disorder, depressive disorder with anxious features not otherwise specified, and unspecified neurocognitive disorder." *Id.* The ALJ also noted the following medically determinable but non-severe impairments: "headaches, hypothyroid, chronic obstructive pulmonary disease (COPD)/asthma/acute bronchitis with a history of tobacco abuse, upper respiratory infection, acute diverticulosis, lower spine spondylosis, thoracic scoliosis, left mastoiditis, otitis media, left ankle fracture, and nephrolithiasis without obstruction." A.R. 16. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* At step four, the ALJ found that Plaintiff had the RFC to perform less than the full range of light work, and was unable to perform any past relevant work. A.R. 18-23. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. A.R. 23-24.

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective because it is based on legal error and is not supported by substantial evidence. Doc. 15. Specifically, Plaintiff argues that the ALJ's mental and physical RFC assessments are not supported by substantial evidence, and that the ALJ erred in discrediting the physical symptom testimony of Plaintiff and her husband, Anthony Baker. *Id.*

**A.    Mental RFC.**

In making the mental RFC determination, the ALJ relied on the opinions of two examining psychologists, Drs. Michael Rabara and Greg Peetoom. A.R. 22-23. He assigned the opinions great weight, and noted that they were "complete," "well-supported by objective" techniques, and "largely consistent with the record as a whole." A.R. 23. Plaintiff asserts that the ALJ's mental RFC determination and ultimate finding of nondisability are inconsistent with these opinions, and that the ALJ gave no reason for rejecting any part of either opinion. Doc. 15 at 10-12.

**1.    Dr. Rabara.**

Dr. Rabara performed a psychological assessment of Plaintiff on January 29, 2014, and diagnosed her with unspecified depressive disorder with anxious features and unspecified neurocognitive disorder. A.R. 2057-63. He opined that Plaintiff had "moderate difficulty carrying out detailed instructions, sustaining her concentration, performing activities within a schedule[,] sustaining an ordinary routine, and completing a normal work day at a consistent pace." A.R. 2063. Plaintiff cites the following testimony from the hearing and argues that Dr. Rabara's opinion establishes disability:

> [Plaintiff's Counsel]:  And if a person were to have difficulty sustaining an ordinary routine and completing a normal work day at a consistent pace, would that person be able to maintain work?
>
> [Vocational Expert]:  No.

A.R. 77.

Defendant responds that the hypothetical posed by Plaintiff's Counsel "is not a

complete statement of Dr. Rabara's opinion" because Dr. Rabara opined to "moderate difficulty," while the hypothetical simply assumed "difficulty." Doc. 25 at 7 (citing SSA Program Operations Manual System (POMS) DI 24510.065(B)(1)(c), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510065). But the POMS section cited by Defendant instructs agency medical consultants *not* to include nonspecific qualifying terms such as "moderate" in the RFC narrative because "[s]uch terms do not describe function and do not usefully convey the extent of capacity limitation." POMS DI 24510.065(B)(1)(c). The POMS section does not regulate the terms that can be used in hypotheticals posed to vocational experts. The hypothetical above fairly restates Dr. Rabara's opinion and avoids use of the term "moderate."

Defendant next argues that the hypothetical took one sentence of Dr. Rabara's opinion out of context, and that the ALJ's RFC determination adequately incorporated the overall findings of the opinion. Doc. 25 at 5-6. The relevant portion of the RFC assessment states that Plaintiff is "limited to understanding, remembering and carrying out simple instructions and performing simple routine repetitive tasks; and she can only have superficial interaction with co-workers and no direct public contact." A.R. 18. Defendant asserts that even where an ALJ assigns an opinion great weight, he need not incorporate the opinion verbatim into the RFC. Doc. 25 at 5-6 (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

In *Rounds*, the court held that the ALJ had adequately incorporated the opinions of two doctors where the ALJ relied on the portions of the opinions containing "specific imperatives" and narratives rather than the "treatment recommendations" or "checkbox" general conclusions. 807 F.3d at 1005-06. The court explained that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Id.*

at 1006. Specifically, one doctor opined that the claimant had "moderate limitations in her ability to accept instructions and respond appropriately to criticisms from supervisors." *Id.* at 1005. The ALJ translated this to the plaintiff being limited to "one to two step tasks with no public contact, no teamwork and limited coworker contact." *Id.* at 1006. Similarly, in *Turner*, the claimant's treating doctor opined that the claimant had "marked limitations in social functioning." 613 F.3d at 1223. The court held that the ALJ had sufficiently incorporated this general observation by limiting the claimant to jobs with no public contact and where it would be recognized that he works best alone. *Id.*

Thus the ALJ in this case was not required to incorporate each sentence of Dr. Rabara's opinion verbatim into the RFC. Rather, he was required to translate Dr. Rabara's clinical findings into a concise RFC (or explain his reasons for rejecting certain findings). But unlike the ALJs in *Rounds* and *Turner* who rephrased the general clinical findings into concrete functional limitations, the ALJ here simply ignored Dr. Rabara's conclusions regarding certain functional capacities. The RFC is silent on Dr. Rabara's opinion that Plaintiff has limited ability to sustain concentration, follow a schedule or routine, and maintain a consistent pace. *See* A.R. 2062. The RFC cannot be characterized as a fair translation because it does not mention any limitation in these categories. *See Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Moreover, Dr. Peetoom, whose opinion was also afforded great weight, similarly opined that Plaintiff was limited in concentration and pace, as explained below. *See* A.R. 876.

### 2. Dr. Peetoom.

Dr. Peetoom evaluated Plaintiff on November 7, 2012, and diagnosed her with

generalized anxiety disorder. A.R. 871-76. He opined that in many respects Plaintiff was oriented and "able to essentially function independently," but found that she may require "instructions to be repeated due to off task behavior" and "additional supervisory intervention" to stay focused on job-related tasks "due to preoccupation with medical issues." A.R. 876. He noted that Plaintiff scored 29 out of 30 on the mini-mental state examination. A.R. 873. He also noted that during the evaluation Plaintiff was frequently focused on medical issues rather than the questions he asked, and that hypochondriasis was a "potential diagnosis," but he did not have sufficient information to make such a diagnosis. A.R. 874. Plaintiff cites the following testimony from the hearing and argues that Dr. Peetoom's opinion establishes disability.

> [Plaintiff's Counsel]: If someone would require additional supervisory intervention in order to help her stay focused on job-related tasks, would that person be able to maintain work?
>
> [Vocational Expert]: Oftentimes, additional supervisory work is given during – at the very beginning, perhaps –
>
> ALJ: Like a probationary –
>
> [Vocational Expert]: That's the word I was looking for. . . . The probationary period. But if it would continue, it would not be tolerated.

A.R. 77.

Defendant responds that this hypothetical incorrectly assumes that Plaintiff *would* require additional supervisory intervention, when Dr. Peetoom opined only that Plaintiff *may* require it. Doc. 25 at 6. According to Defendant, because this opinion was not a "specific imperative of a limitation," the ALJ was not required to consider it. Doc. 25 at 6 (citing *Rounds*, 807 F.3d at 1006)). But the case cited by Defendant did not announce such a rule. *Rounds* simply found that an ALJ adequately incorporated a doctor's opinion by focusing on the specific imperatives rather than the recommendations. *See* 807 F.3d at 1005-06. Defendant does not make this distinction. Dr. Peetoom's opinion does not appear to contain a "recommendations" section, and the

portion that Plaintiff relies on appears in the final section of the report where Dr. Peetoom was instructed to give a statement of his "medical opinion" based on his "substantiated medical findings about what the individual can still do despite his or her impairment(s)." A.R. 875 (emphasis omitted).

Defendant also argues that the RFC determination adequately incorporated the opinion by stating that Plaintiff is "limited to understanding, remembering and carrying out simple instructions and performing simple routine repetitive tasks; and she can only have superficial interaction with co-workers and no direct public contact." Doc. 25 at 5-6 (quoting A.R. 18). This is a closer call than Dr. Rabara. Although Dr. Peetoom notes limitations regarding Plaintiff's ability to concentrate and stay on task, he seems to doubt this limitation, and the overall thrust of his report is that Plaintiff could function relatively normally other than her preoccupation with medical issues. *See* A.R. 871-76.

In any event, the opinions of both Dr. Peetoom and Dr. Rabara – which were afforded great weight by the ALJ – agreed that Plaintiff was limited to some extent in sustained concentration, persistence, and pace. The RFC included no limitations in these areas, and there is no indication that the ALJ considered the doctors' findings in these areas. This was error. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

The Court cannot deem the error harmless in light of the vocational expert's testimony that specific portions of each doctor's opinion in these categories, if accepted, would preclude work. But the Court does not agree with Plaintiff that the opinions conclusively establish disability. Given that the two opinions are not in agreement on the exact extent of Plaintiff's mental limitations, the ALJ should have weighed the opinions and made some finding as to the appropriate functional limitation, if any, to include in the RFC. Plaintiff's counsel simply took the most favorable phrase out of each opinion, modified it slightly, and posed it to the vocational expert. The ALJ could have formulated an alternative assessment. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th

Cir. 2017) (remand for further proceedings is appropriate when there are "outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would be useful"); *Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). The Court will remand for the ALJ to make this determination.

## B. Physical RFC.

Plaintiff argues that the ALJ erred in determining that she had the physical RFC to perform "less than the full range of light work," including the ability to stand or walk for six of eight hours, frequently climb ramps and stairs, frequently stoop and crouch, and occasionally balance and kneel. *See* A.R. 18. Specifically, Plaintiff argues that the ALJ (1) provided insufficient reasons for discrediting Plaintiff's physical symptom testimony and (2) the testimony of her husband, (3) failed to consider evidence that Plaintiff used a walker for gait issues and frequently fell, and (4) denied Plaintiff's request to subpoena three consulting agency physicians but nonetheless relied on these opinions in formulating Plaintiff's physical RFC. *See* Doc. 15.

### 1. Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).[1]

---

[1] Defendant opposes the clear and convincing standard of review (Doc. 25 at 8),

Plaintiff appeared at the hearing with a walker and testified that she used it every time she walked. A.R. 65, 68. Plaintiff testified that she went to the doctor about three times per week, and stayed for 45 minutes to an hour each time. A.R. 66. Plaintiff stated that she could sit or stand for about 20 minutes before she needed to change positions due to pain. *Id.* She stated that she usually spent about 6 hours in bed each day, and her doctors told her to elevate her legs. A.R. 70-71. And she testified that her medications caused the following side effects: weight gain, nausea, sleepiness, dizziness, and vomiting. A.R. 72.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. A.R. 19. He provided three reasons: (1) despite her impairments Plaintiff "engaged in a somewhat normal level of daily activity and interaction," (2) she did not "generally receive the type of medical treatment one would expect for a totally disabled individual," and (3) her testimony was "not supported by objective medical findings." A.R. 19-20. The ALJ did not find that Plaintiff was malingering.

Plaintiff relies on *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), and argues that the ALJ's analysis is overly general and failed to identify any specific conflicts between Plaintiff's testimony and the medical evidence. Doc. 15 at 13. Defendant responds that the ALJ was not required to specifically discuss each piece of evidence, and his reasoning is sufficient to support the credibility finding. Doc. 25 at 8-14. The Court will address each of the ALJ's reasons.

### a. The ALJ's First Reason.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent

---

but the Ninth Circuit has held that Defendant's position "lacks any support in precedent and must be rejected," *Garrison*, 759 F.3d at 1015 n.18.

with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the activities contradict the claimed limitations, or the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ noted that Plaintiff testified that she lived with her children; watched her grandchildren; was able to toilet, bathe, and clean herself; prepared meals; watched television; did laundry; texted with her children; had a Facebook page; attended church; went to the park with her children; and lifted her granddaughter. A.R. 19. He also noted that in her function reports she reported washing dishes; going shopping, to birthday parties, and to the cemetery once per month; handling her own finances; reading; having barbeques at her house; following instructions adequately; getting along with authority figures; and handling stress and change okay. *Id.* Without explanation, the ALJ found that the "physical and mental capabilities requisite to performing" these tasks "are similar to those necessary for obtaining and maintaining employment." *Id.* But the ALJ did not find that Plaintiff spent a substantial part of her day performing these activities. Nor did the ALJ explain why Plaintiff's activities are inconsistent with her claimed limitations.

Moreover, Plaintiff's testimony at the hearing indicated that she performed many of these activities infrequently or with assistance. *See* A.R. 41-42 (stating that although her grandchildren stayed at her house, Plaintiff's children provided the actual care); A.R. 57 (stating that she is able to toilet, bathe, and dress herself, but she does not bathe every day because "it's just so hard"); A.R. 59 ("I did a load of laundry the other day. It was the first load I've done in a few months. . . . I put it in the washing machine. My brother took it out for me."); A.R. 61 (stating that the last time she went to church in person was "maybe two months ago," and she watches it online when she cannot go);

A.R. 62 (stating that she went to the park with her grandchildren but she fell within a few minutes and had to leave after 20 minutes); A.R. 68-70 (stating that she can lift a gallon of milk but it is "kind of heavy," and she never goes grocery shopping).

The function reports cited by the ALJ contain similar limiting statements. *See* A.R. 223-25 (stating that she uses a walker, is unable to do household chores other than washing dishes, and can only do a chore for 20 minutes before she has to stop); A.R. 260-67 (stating that she uses a walker, her "kids help with everything," she sometimes goes grocery shopping but never alone and often using an electric scooter, she attends her grandchildren's birthday parties or barbeques at her house "maybe every couple of months," and she tries to go to church twice per month and to the cemetery once per month); A.R. 292-99 (stating that she bathes only when she has to, sometimes needs help using the toilet, her husband cooks for her, she shops for food once per month, she can walk ten yards before she needs to stop, and she uses a walker daily).

The ALJ did not explain why these activities are inconsistent with Plaintiff's claimed limitations, and it does not appear that Plaintiff spent a substantial part of her day engaging in the activities. The Court cannot conclude that the ALJ's first reason for rejecting Plaintiff's symptom testimony was specific, clear, and convincing.

### b.     The ALJ's Second Reason.

In some circumstances, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, the ALJ found that Plaintiff's "treatment records reveal [she] received routine, conservative, and non-emergency treatment since the alleged onset date." A.R. 20. The ALJ stated that he "read and considered all the medical evidence in the record," and he summarized a number of treatment records where Plaintiff received CT scans of her brain, head, chest, and abdomen; electrocardiograms; a colonoscopy; an ultrasound of her head and neck; chest x-rays; and venous ultrasounds, where the medical findings were unremarkable or normal. A.R. 20-21. The ALJ also noted that Plaintiff had "a history of frequent Emergency Room visits with no conclusive

diagnosis being made." A.R. 22.

Plaintiff argues that these normal findings do not discredit her testimony because they are unrelated to her impairments or consistent with her impairments and alleged symptoms. Doc. 15 at 15-17. For example, Plaintiff asserts that the normal brain CT scans are irrelevant because she did not allege a brain injury, and the lack of pulmonary emboli in a June 2012 chest CT scan is insignificant because pulmonary emboli are not expected to be present at each examination. *Id.* at 15. Plaintiff argues that the normal stress test in January 2013 is irrelevant given that later tests verified she had bradycardia, and she was recommended for and implanted with a pacemaker. *Id.*; *see also* A.R. 2595. Defendant does not dispute these specific assertions. *See* Doc. 25 at 9-10.

Moreover, the record contains evidence that Plaintiff sought significant and frequent treatment. Plaintiff testified that she went to the doctor about three times per week, and the record contains evidence that she was hospitalized frequently. A.R. 66; Doc. 15 at 4-5 (listing 15 instances of hospitalization in 2013 and 2014). She was prescribed numerous medications and medical devices, including Coumadin, Lovenox, Percocet, diazepam, Lortab, levothyroxine, lisinopril, Clonidine, Triamterene, Cloreg, gabapentin, an IVC filter, and a loop recorder and pacemaker. A.R. 400, 414-15, 442, 490, 544, 579, 972, 2125, 2291. The ALJ provided no explanation as to why he considered these treatments to be "conservative," and such a characterization is not supported by the record. The Court accordingly finds that this was not a convincing reason to discredit Plaintiff's testimony.

### c.    The ALJ's Third Reason.

The Ninth Circuit has made clear that if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (a claimant need not produce "objective medical evidence of the pain or

fatigue itself, or the severity thereof")).  But an ALJ may rely on contradictory medical evidence to discredit symptom testimony, so long as he "make[s] specific findings justifying his decision."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick*, 157 F.3d at 722).

The ALJ stated that Plaintiff's "alleged loss of function is not supported by objective medical findings" (A.R. 20), but provided no supporting explanation or analysis.  The ALJ did cite a number of medical records where the findings were normal or unremarkable (*see* A.R. 20-21), but he provided no explanation as to why these findings undermined Plaintiff's symptom testimony.  Nowhere does the ALJ "identify what testimony is not credible and what evidence undermines" Plaintiff's complaints.  *Brown-Hunter*, 806 F.3d at 493.  This is not a clear and convincing reason to discredit Plaintiff's testimony.

### d.    Conclusion.

Because none of the ALJ's reasons is clear and convincing, the ALJ erred in discrediting Plaintiff's testimony regarding the severity of her symptoms.  *See Garrison*, 759 F.3d. at 1015.  Given that Plaintiff's testimony clearly conflicts with the physical RFC determination on which the ALJ based his ultimate finding of nondisability, the Court cannot deem this error harmless.  Because the vocational expert did not specifically opine whether Plaintiff could sustain work if her symptom testimony were credited, the Court will remand for further development of the record on this issue.

### 2.    Mr. Baker's Testimony.

To disregard the testimony of a lay witness, the ALJ must provide specific reasons that are germane to each witness.  *Valentine*, 574 F.3d at 694.  Mr. Baker completed a third party function report in which he reported largely the same limitations Plaintiff testified to.  *See* A.R. 268-77 (stating that Mr. Baker lives with Plaintiff and does "everything" for her; he helps her up from bed to get to the restroom; Plaintiff is able to

clean and cook "a little sometimes . . . when feeling well"; Plaintiff is in pain every day and has dizzy spells; Plaintiff goes to the store once per month and the doctor three times per week; Plaintiff uses a walker).

The ALJ found that Mr. Baker's statements were "only credible to the extent that his statements are consistent with the conclusion that [Plaintiff] can do the work described herein." A.R. 19. The ALJ gave the following reasons: (1) the statements were not given under oath; (2) as a lay witness, Mr. Baker was not competent to make diagnoses or "argue the severity of [Plaintiff's] symptoms in relationship to her ability to work"; (3) the medical evidence did not support his statements; and (4) as Plaintiff's sole supporter, Mr. Baker's statements were biased by his financial interest in the outcome of this case. A.R. 19. Plaintiff argues that these are not germane reasons. Doc. 15 at 24-25.

Defendant concedes that the ALJ erred in rejecting Mr. Baker's statements based on the first three reasons. Doc. 25 at 20. But Defendant argues that the fourth reason is alone sufficient. *Id.* at 21. Defendant cites *Greger v. Barnhart*, 464 F.3d 968 (9th Cir. 2006), and *Ingham v. Astrue*, No. EDCV 10-1479-JEM, 2011 WL 3424485 (C.D. Cal. Aug. 5, 2011), in support. *Id.* In *Greger*, the ALJ properly rejected testimony from the plaintiff's girlfriend because her statements were inconsistent with the plaintiff's reports to physicians during the relevant time and she had a "close relationship" with the plaintiff and was possibly influenced by a desire to help him. 464 F.3d at 972. In *Ingham*, the ALJ properly rejected testimony from the plaintiff's mother because her statements were inconsistent with the medical evidence, simply parroted the plaintiff's testimony, which the ALJ properly discredited, and she had a financial interest because she was plaintiff's sole supporter. 2011 WL 3424485, at *8.

Neither *Ingham* nor *Greger* held that potential financial interest alone is a sufficient reason to reject lay witness testimony. Defendant cites *Valentine*, 574 F.3d at 694, for the proposition that only one germane reason is necessary. Doc. 25 at 21. *Valentine* addressed an ALJ's rejection of statements from two lay witnesses: the plaintiff's wife and his former supervisor. True, the court found that one germane reason

was sufficient to support the ALJ's rejection of the supervisor's testimony, but in addressing the wife's testimony the court held that "[i]n light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the plaintiff's testimony], and because [the wife's] testimony was similar . . ., it follows that the ALJ also gave germane reasons for rejecting [the wife's] testimony." 574 F.3d at 694. The court further held that the fact that the wife was an interested party was not a germane reason because this is a characteristic "common to all spouses." *Id.* The court clarified: "[E]vidence that a specific spouse exaggerated a claimant's symptoms *in order* to get access to [her] disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." *Id.* (emphasis in original). But the court found that the ALJ's reliance on this non-germane reason was harmless in light of the other germane reasons. *Id.*

The Court cannot conclude that the ALJ provided specific, germane reasons for discrediting Mr. Baker's testimony. Although it was not error to consider Mr. Baker's financial incentive, this reason alone is not sufficient under the circumstances because the ALJ did not find that Mr. Baker "exaggerated [Plaintiff's] symptoms in order to get access to [her] disability benefits." *Valentine*, 574 F.3d at 694. The ALJ stated that the "most important[]" reason he rejected Mr. Baker's testimony was that the medical evidence did not support his statements – a reason Defendant concedes was error. The ALJ provided this same reason in rejecting Plaintiff's symptom testimony, and the Court concluded above that it was not a convincing reason. In light of (1) the similarity between Plaintiff's testimony and the testimony of her husband, (2) the Court's determination that the ALJ erred in discrediting Plaintiff's testimony, and (3) the ALJ's statement that the same reason the Court found unconvincing with respect to Plaintiff's testimony was the most important factor in rejecting Mr. Baker's testimony, the Court concludes that the ALJ's citation of one arguably germane reason (financial interest) does not suffice.

This error was not harmless for the same reasons that the ALJ's error in rejecting

Plaintiff's testimony was not harmless. Both Plaintiff and Mr. Baker testified to limitations that directly conflict with the physical RFC determination. The Court will remand for reconsideration of this issue.

### 3. Evidence of Falls and Walker.

Plaintiff argues that the ALJ failed to consider "extensive evidence of [Plaintiff's] gait dysfunction, imbalance, frequent falls, . . . syncope, [and] her need to use a walker," and her "need to periodically lie down, rest, or take breaks," which is inconsistent with the ALJ's physical RFC determination. Doc. 15 at 8, 21-22. At the hearing, Plaintiff appeared with a walker and testified that she began using it in 2010 or 2011 and used it every time she walked. A.R. 65, 68. She testified that her orthopedic surgeon, Dr. Domer, prescribed the walker. *Id.* The ALJ asked Plaintiff's counsel if the prescription was in the record. *Id.* Counsel stated that she could not locate the actual prescription, but she found "eight-plus" mentions of the walker throughout the record. *Id.*

The ALJ's RFC discussion did not explicitly address the walker or evidence of falls, syncope, or gait issues. But in making the physical RFC determination, the ALJ assigned great weight to the opinions of agency consulting physicians Terry Ostrowski, James Wellons, and James Metcalf. A.R. 22; *see also* A.R. 80-87, 848-55, 92-116. These doctors opined to light physical restrictions despite Plaintiff's impairments. *Id.* at 85-86, 849-50, 110.

The ALJ stated that he "read and considered all the medical evidence in the record" in making the RFC determination. A.R. 20-23. The record contains evidence that Plaintiff used a walker and had gait abnormalities and issues with falling and fainting. *E.g.*, A.R. 544-46 (noting that Plaintiff "was unable to walk" and had "some gait disturbances" due to swelling in her knees), 993 (noting that Plaintiff started using a walker due to "recurrent falls, dizziness and vertigo"), 1322 (noting that Plaintiff had "chronic knee pain and uses a walker"); 1652 (Plaintiff "ambulates with the walker, which she uses at home as well"), 1899 (noting a "history of frequent falls" and "abnormal gait"), 2058-59 (noting that Plaintiff's leg was in a cast and she was in a

wheelchair due to a fainting episode resulting in surgery to repair her ankle), 2291 (Plaintiff went to the emergency room after a syncopal episode and had another episode in the emergency department). But the record also contains conflicting evidence. *E.g.*, A.R. 415 (noting that Plaintiff's range of motion and strength in all four extremities were normal), 579 (noting "normal gait"), 1091 (same), 2310 (recommending "[n]o physically strenuous activity, but ambulatory and able to carry out light or sedentary work"), 2331 (noting "[n]ormal gait and station").

In relying on the opinions of Drs. Ostrowski, Wellons, and Metcalf, the ALJ stated that the doctors' "access to and review of the entire medical evidence render their opinions both current and comprehensive." A.R. 22-23. But the opinions were issued in 2011, 2012, and 2014, respectively – about four, three, and one year prior to the ALJ's decision. Plaintiff argues, and Defendant concedes, that this was error because the opinions were not current and the doctors did not review the entire record. Doc. 15 at 22; Doc. 25 at 16. Plaintiff specifically notes that the doctors did not consider important medical evidence that Plaintiff was "hospitalized for severe symptoms of her conditions in almost every month of 2013." *Id.* But this concern is alleviated by the fact that Dr. Metcalf did consider this evidence, and nonetheless opined to the same light restrictions. *See* A.R. 111-12. Thus, although the ALJ erred in stating that the opinions were current and based on a review of the entire record, any error is harmless because the ALJ did consider the entire record and the three doctors consistently opined to essentially the same limitations, albeit at different times.

Plaintiff also argues that the ALJ erred by not including all of the limitations the doctors opined to. Doc. 15 at 22. All three doctors agreed that Plaintiff could frequently lift 10 pounds, occasionally lift 20 pounds, and stand or sit for six hours of an eight-hour day. A.R. 85, 110, 849. But Drs. Wellons and Metcalf opined that Plaintiff had no postural limitations, while Dr. Ostrowski opined that Plaintiff could only occasionally crouch. A.R. 86, 110, 850. The RFC assumes that Plaintiff could frequently crouch. A.R. 18. This is not a harmful error, where there remain two opinions entitled to great

weight that found no restriction on crouching. Similarly, Dr. Metcalf opined that Plaintiff needed to avoid concentrated exposure to extreme cold and heat, fumes, odors, dusts, gases, and poor ventilation. A.R. 111. But Drs. Wellons and Ostrowski found no restrictions in these categories. A.R. 86, 852. The Court will not disturb the ALJ's determination on this issue, where it remains supported by two opinions.[2]

The ALJ's determination that Plaintiff could perform light work with the additional restrictions noted above despite her documented gait and syncope issues is supported by substantial evidence. The Court will not disturb the ALJ's physical RFC determination on the ground that the ALJ failed to consider the walker and gait evidence.

### 4. Plaintiff's Subpoena Request.

Plaintiff challenges the ALJ's reliance on the opinions of Drs. Ostrowski, Wellons, and Metcalf because Plaintiff was denied the opportunity to cross examine them. Doc. 15 at 22-23. Prior to the hearing, Plaintiff submitted a request to subpoena the non-examining agency physicians or alternatively to send them interrogatories. A.R. 330-33. At the hearing, the ALJ verbally denied the request, but stated that he would revisit it after the evidence was presented if he felt it was necessary. A.R. 37. The issue was not revisited, and as noted above the ALJ relied on the opinions of three non-examining agency physicians in formulating Plaintiff's physical RFC. *See* A.R. 22.

Plaintiff argues that this was error, citing *Richardson v. Perales*, 402 U.S. 389 (1971), for the following proposition: "When a disability claimant exercises her right to subpoena a physician under 42 U.S.C. § 405(d) and the request is denied, the physician's opinion is not substantial evidence on which a claimant's disability evidence can be rejected." Doc. 15 at 23. The relevant portion of *Richardson* states:

> We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings

_____

[2] Defendant also presents evidence that any error in not including the crouching or environmental restrictions is harmless because, even if the restrictions were included in the RFC, Plaintiff still could have performed the three occupations the vocational expert identified. *See* Doc. 25 at 18-19. Because the Court finds harmless error for other reasons, it need not consider this argument.

in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, *when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.*

402 U.S. at 402 (emphasis added). Plaintiff relies on the italicized language and argues that because the court included this qualifier, it follows that when the claimant *has* exercised her right to subpoena the physician, the ALJ may not rely on the physician's opinion if he denies the subpoena request. Doc. 15 at 23.

Defendant responds that this argument "rests on flawed reasoning," but does not offer contrary authority. Doc. 25 at 19. Defendant also argues that Plaintiff waived the argument by failing to object after the ALJ verbally denied the request. *Id.* at 20. Neither party offers a case directly on point.

The Ninth Circuit has held that "where the physician is a crucial witness whose findings substantially contradict the other medical testimony, . . . the claimant has been denied procedural due process if his request to subpoena the physician is not granted." *Solis v. Schweiker*, 719 F.2d 301, 301 (9th Cir. 1983); *see also Bello v. Astrue*, 241 F. App'x 426, 427 (9th Cir. 2007). But a claimant is only entitled to "such cross-examination as may be required for a full and true disclosure of the facts," and the ALJ has discretion to decide when cross-examination is warranted. *Solis*, 719 F.2d at 302 (quoting 5 U.S.C. § 556). Thus, an ALJ's denial of a claimant's subpoena request is reviewed for an abuse of discretion. *Id.*

Although the opinions of Drs. Ostrowski, Wellons, and Metcalf are fairly characterized as "crucial" to the ALJ's nondisability determination, Plaintiff does not argue that their "findings substantially contradict the other medical testimony." *Id.* at 301. In *Solis* and *Bello*, the claimant's treating physician offered an opinion that substantially contradicted the agency physician's opinion. *Id.* Plaintiff has not identified

similar circumstances.  The Court therefore does not find an abuse of discretion.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and **remanded** for further proceedings consistent with this Order.  The Clerk shall **terminate** this action.

Dated this 7th day of May, 2018.

_David G. Campbell_
United States District Judge